UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID R. KNOLL,

Plaintiff,

**Hon. Hugh B. Scott**

v.

02CV692A

**Report & Recommendation**

HAROLD SCHECTMAN,
BRIAN SCHECTMAN,
DONALD LARDER and
DONNA MIKULA,

Defendants.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 74, see also Docket No. 27). The instant matter before the Court is defendants Harold Schectman ("Schectman") and Brian Schectman's (collectively the "Schectmans") joint motion (Docket No. 72) to dismiss the Amended Complaint (Docket No. 60). Pro se defendants Donald Larder and Donna Mikula join in the Schectmans' defenses (Docket Nos. 70 (Larder), 71, 75 (Mikula); see also Docket Nos. 76, 81, 82).

This Court issued a briefing schedule requiring responses to this motion by September 16, 2005, any replies by September 30, 2005, and argument on November 4, 2005 (Docket Nos. 76, 77)[1].

## BACKGROUND

This is a civil Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962) action commenced by plaintiff. Previously, this Court issued a Report & Recommendation (Docket No. 42[2]) recommending granting defendants' motions to dismiss the Complaint and deny plaintiff leave to amend. Chief Judge Richard J. Arcara adopted in part this Report & Recommendation, but granting plaintiff leave to amend the Complaint (Docket No. 58).

*Initial Complaint*

Plaintiff filed his first Complaint on September 25, 2002 (Docket No. 1), then filed a supporting RICO Case Statement as required by Local Civil Rule in this District on November 12, 2002 (Docket No. 11). In the 53-page, 151-paragraph Complaint, plaintiff alleged five counts, a civil RICO count (18 U.S.C. § 1962(c)), a civil RICO conspiracy count (18 U.S.C. § 1962(d)), and three state law counts for common law fraud, conversion, and breach of fiduciary duty (Docket No. 1, Compl. ¶¶ 120-31, 132-35, 136-40, 141-45, 146-51). Plaintiff sought a full

---

[1]Larder and Mikula were given until August 30, 2005, to submit any additional arguments they may have to the Schectmans' motion (Docket No. 76).

[2]For convenience, attached to the electronically filed version of this Report & Recommendation is an electronic pdf file copy of the former Report & Recommendation (Docket No. 42, familiarity with which, and Chief Judge Arcara's Order, is presumed). Similarly, a copy of Chief Judge Arcara's Order (Docket No. 58) on that first Report & Recommendation also is attached as a pdf file to this Report.

accounting of his affairs with the Schectmans and their affiliated organizations, compensatory damages trebled by statute, attorneys' fees and other relief.[3] He alleged these claims against the Schectmans, Ted Kosiorek, Mary Ann Miller, Donald Larder, and Donna Mikula.

*Report & Recommendations and Adopting Order*

Defendants each moved to dismiss (Docket Nos. 18 (Miller), 19 (Larder and Mikula), 21 (Brian Schectman), 23 (Harold Schectman), 25 (Kosiorek)). On September 26, 2003, this Court issued a Report & Recommendation recommending that all defense motions to dismiss should be granted without leave to replead (because plaintiff never sought to amend the Complaint, Docket No. 42, at 11). Since plaintiff did not allege how the Schectman entities were used in the alleged racketeering activities, plaintiff failed to allege a RICO enterprise and his RICO and RICO conspiracy claims failed (id.). It also was recommended that the Court not exercise supplemental jurisdiction over the state law claims (id. at 12; see Docket No. 58, Order, at 2 n.3). Plaintiff filed objections to this Report & Recommendation (Docket No. 44). The parties then stipulated to dismiss claims against Miller and Kosiorek (Docket No. 56; see Docket No. 58, Order, at 1 n.2).

Chief Judge Arcara adopted in part the Report & Recommendation, agreeing that plaintiff failed to allege a RICO enterprise to sustain his RICO claims (Docket No. 58, Order, at 3), noting that plaintiff did not allege a common purpose, hierarchy, organization or activities of the purported enterprise, only alleging Schectman's activities (id.). The Chief Judge rejected that part of the Report & Recommendation that would have precluded plaintiff from repleading and

[3]For details of the allegations in this pleading, see also Docket No. 42, Report & Recommendation, at 1-5.

invited plaintiff to file an Amended Complaint and amended RICO Case Statement by May 25, 2005 (id. at 2, 4, 6). The Chief Judge discussed the pleading problems contained in the initial Complaint (such as the short, plain statement and simple, concise and direct pleading requirements of Rule 8(a)(2) and (e) and pleading in particularity requirement for fraud allegations of Rule 9(a), noting that the pleading read like "a dime novel," id. at 5), identifying areas that need to be addressed in repleading (id. at 4-6).

*Amended Complaint*

Plaintiff then filed the present Amended Complaint (Docket No. 60, May 27, 2005) with RICO Statement (Docket No. 59). Reduced to 58 paragraphs and 25 pages, plaintiff now alleges in the Amended Complaint only one count, for RICO conspiracy against Schectman, Brian Schectman ("Brian Schectman"), Larder, and Mikula.

*Alleged Scheme*

From the mid-1980s, plaintiff was solicited by Schectman to enter into a series of real estate and financial transactions where Schectman as lender and real estate developer would lend money from one of his enterprises to plaintiff to enter into real estate and other business transactions. Plaintiff alleges that the Schectman entities were being used interchangeably with other Schectman entities (Docket No. 60, Am. Compl. ¶¶ 10, 12). Plaintiff observed that Schectman used assets from the Schectman companies and family trusts to generate private financing for his lending and real estate development, then used the Schectman entities to hold title to properties. Schectman used the same core of employees (including Brian Schectman and former parties Kosiorek and Miller) in these entities (id. ¶¶ 13, 14). Plaintiff developed a close professional and personal relationship with Schectman (id. ¶¶ 11, 15). Plaintiff engaged in over

twenty transactions with Schectman, each typically handled in a set format (id. ¶¶ 18, 16). Schectman would provide financing to plaintiff for troubled properties plaintiff identified and acquired; Schectman would hold title or a security interest in the properties until the loan was repaid (id. ¶ 16). Schectman first borrowed the money he used for financing and charged plaintiff a higher rate, and Schectman and plaintiff agreed to share the difference between the two rates equally. Once plaintiff paid off the financing, he was supposed to get full title to the property and the rate differential. (Id.) Schectman, through his entities and core employees, allegedly controlled the allocation of monies due to plaintiff by creating or inflating charges on plaintiff's account (id. ¶¶ 17, 23). The Schectmans would render false and fraudulent monthly account reconciliation statements by mail or wire transmission which contained false charges for escrow accounts from where, for example, taxes were supposed to be paid but were not (id. ¶ 23). Plaintiff claims that this is a pattern of self-dealing that Schectman and his entities engage in against others (see id. ¶¶ 46-47).

As for defendant Brian Schectman, plaintiff alleges that he is the son and designated heir of Schectman for his private lending and real estate development businesses as well as the companies and trusts that constitute the Schectman entities (id. ¶ 4). The Schectmans unilaterally sold plaintiff's property at 2727 William Street without right or notice to plaintiff after plaintiff paid $9,501.33 per month for almost a hundred months to pay for the property (id. ¶ 21) to defraud plaintiff in what he calls a "large" matter (id. ¶¶ 21, 20; see id. ¶ 25). This is the extent of the specific allegations against Brian Schectman in this amended pleading.

Plaintiff alleges that the Schectmans (and later Larder and Mikula) and unidentified others conspired to violate 18 U.S.C. § 1962(c) by agreeing to commit at least two predicate acts

of mail fraud and wire fraud to defraud plaintiff (id. ¶¶ 20, 51). Specifically, defendants mailed or wired fraudulent documents to plaintiff or about plaintiff's transactions with Schectmans' entities. (Id. ¶¶ 50-58.) As for Larder, plaintiff claims that Larder was plaintiff's faithful employee who was supposed to purchase Jamestown Naval Reserve Center for plaintiff's firm, the Manor Oaks Skilled Nursing Facilities (id. ¶¶ 26-29). After that bid was accepted, Schectman approached Larder and Mikula (Larder's then girlfriend, id. ¶ 6, and an employee at Manor Oaks with Larder, id. ¶ 31) to enter into a conspiracy to defraud plaintiff by appropriating the future potential of Manor Oaks through Larder and Mikula's inside information of plaintiff's business plans (id. ¶ 31). Plaintiff claims that Larder and Mikula caused Manor Oaks to breach its lease and vacate offices owned by plaintiff, removing all Manor Oaks business records (id. ¶ 32). Larder and Mikula then consummated the acquisition of the Jamestown Naval Reserve Center, conveyed in their individual names rather than in the Manor Oaks corporate name. Upon information and belief, plaintiff alleges that the Schectmans and their entities funded Larder and Mikula's acquisition. (Id. ¶ 34.) Plaintiff also had Larder serve as his incorporator for an entity to acquire another nursing facility in Florida; instead, Larder, Mikula, and Schectman allegedly held an illegal corporate meeting and elected themselves the new board of directors and officers of the acquiring corporation, eliminating plaintiff's interest in the corporation (id. ¶¶ 38, 40). Larder and Mikula, through the misappropriated corporation, sued plaintiff in Florida state court to enjoin him from having further contact or control over the corporation, where plaintiff claims Larder and Mikula made perjurious allegations (id. ¶¶ 41, 42), using the mail to transmit the false pleadings (id. ¶ 42).

Plaintiff concludes that the Schectman entities constitute the RICO enterprise (id. ¶ 51), but plaintiff does not allege how these entities form the RICO enterprise.

In his Amended RICO Case Statement (Docket No. 59), plaintiff claims that Schectman was the "control person orchestrating the individuals and entities employed to facilitate the scheme to defraud" plaintiff (id. ¶ 2; see Docket No. 60, Am. Compl. ¶ 3). Brian Schectman was alleged to be Schectman's heir who apparently took over Schectman's affairs in early 2002, and conspired to defraud plaintiff (Docket No. 59, ¶ 2). The enterprise alleged in the RICO Case Statement is the "Schectman Enterprise," the collection of Schectman corporations and family trusts plaintiff alleges were owned or controlled by Schectman (id. ¶ 6). Among their uses, the entities in the Schectman Enterprise allegedly were used "to generate false records to defraud the plaintiff and others by artificially inflating the costs associated with the money lending/property acquisition transactions in question and artificially reducing the credits applied to the accounts for those transactions," "on occasion, to facilitate the improper conversion of property interests owned by the plaintiff," and "to create a veneer of respectability for the money-lending and property acquisition practices in question" (id. ¶ 6(b)). The Schectmans are associated with these entities through their ownership, employment or beneficiary relationships with the respective entities, while defendants Larder and Mikula are associated through their alleged conspiracy with the Schectmans to defraud plaintiff out of the Manor Oak and Safe Harbour Florida nursing home facilities (id. ¶ 6(d)).

*Defendants' Present Motion to Dismiss*

The Schectmans jointly move to dismiss the Amended Complaint under Rule 12(b)(6), arguing that plaintiff failed to allege an agreement for the RICO conspiracy, failed to plead the RICO enterprise or the Schectmans' conduct in that enterprise, or their commission of predicate acts, showing a pattern of racketeering activity, or any injury to plaintiff from the purported pattern. (Docket No. 72, Notice of Motion.) They also move for dismissal on the form of the amended pleading under Rules 8 and 9(b) for not alleging simple, concise and direct allegations and not alleging the fraud with the requisite particularity (id.). They also contend that plaintiff's claims are time barred (id. Defs. Atty. Aff. ¶ 12; Docket No. 73, Defs. Memo. of Law at 8-10 (four-year statute of limitations for RICO claim barring claims before September 25, 1998). It appears that the pro se defendants Larder and Mikula join in this motion (see Docket Nos. 70, 71, 75) and the Court will treat their position as joining in the Schectmans' motion (see Docket No. 76).

Defense counsel noted the death of Harold Schectman on August 8, 2005 (Docket No. 72, Defs. Atty. Aff. ¶ 2 n.1). In a later affidavit, counsel noted that Schectman's widow was proceeding to be appointed executrix of his estate. The parties agreed that, once this appointment is made by the Surrogate's Court, the estate would substitute for Schectman (Docket No. 79, Def. Atty. Aff. ¶ 8). No formal suggestion of death has been served or filed, cf. Fed. R. Civ. P. 25(a)(1); Al-Jundi v. Rockefeller, 88 F.R.D. 244, 246 (W.D.N.Y. 1980) (Elfvin, J.) (estate of deceased party or other parties may serve a suggestion of death on the record, but not decedent's counsel); but cf. Jones Inlet Marina, Inc. v. Inglima, 204 F.R.D. 238, 240 (E.D.N.Y. 2002) (decedent party's attorney may file suggestion of client's death).

Plaintiff responds that he amended the Complaint to address "prior judicial criticisms of the original complaint" (Docket No. 78, Pl. Atty. Decl. ¶ 4), and reduced its scope to one count, alleged over 58 paragraphs on 25 pages (id.). Plaintiff urges that the defense's "shotgun" motion to dismiss should be denied (Docket No. 78, Pl. Memo. at 2) because, under the "plaintiff-friendly standard of review" (id.) defendants numerous arguments fail. He contends that his claim is not time barred and was plead with sufficient particularity (id. at 2-3, 3-8). He states that a conspiracy was adequately plead, pointing to circumstantial evidence of the conspiracy alleged generally in the Amended Complaint (see id. at 9-10). He distinguishes a RICO conspiracy from a substantive RICO offense, arguing that pleading of the substantive portions of the RICO conspiracy are less demanding than alleging them as a distinct claim (id. at 10-11). He then outlines the substantive RICO elements, such as the enterprise, Schectman's control of the enterprise, the pattern of racketeering activity, the mail and wire fraud contentions, and plaintiff's injuries (id. at 11-20).

Defendants replied[4] refuting each point plaintiff made in his response (Docket No. 80). In a reply affidavit, defense counsel noted that the facial changes between the original Complaint and Amended Complaint were not "the substance required in order to meet the necessary pleading requirements as outlined by this Court in its determination to dismiss the original

---

[4]Without seeking written, prior approval of the Court to submit an oversize memoranda, defendants submitted a 55-page Memorandum of Law and a 35-page Reply Memorandum of Law (exclusive of Certificates of Service), Docket Nos. 72, 80. See W.D.N.Y. Local Civ. R.7.1(f) (without prior approval of Court, main memoranda or briefs shall not exceed 25 pages and reply briefs shall not exceed 10 pages). While a RICO conspiracy claim can be complex and its elements require particularized allegations, counsel is reminded to comply with this Court's local rules regarding motion practice and, if additional pages are required to argue their points, to make prior written requests to the Court for leave to file oversized papers prior to their submission.

Complaint" or the necessary specificity of detail (Docket No. 79, Defs. Atty. Reply Aff. ¶¶ 4, 5). Parties, including Mikula[5], argued the motion on November 4, 2005 (Docket No. 82). The Court then deemed this motion submitted and reserved decision (id.).

## DISCUSSION

At issue here is whether plaintiff alleged a claim under RICO, in particular addressing the issues defendants raised in their first set of motions to dismiss and this Court's first Report & Recommendation as adopted by Chief Judge Arcara (see Docket Nos. 42, 58).

I. Applicable Standards

A. Rule 12(b) Standard

As they did with the initial pleading, the defendants here have moved to dismiss the Amended Complaint on the grounds that it fails states a claim for which relief can be granted. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court can not dismiss a complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint.

[5]Defendant Mikula argued on November 4, 2005, that she did not know any of the other parties. She also joined in the arguments of the Schectmans in support of their joint motion to dismiss. Given that this is a motion to dismiss and that Mikula is proceeding pro se, this Court will not consider the factual issues raised in Mikula's argument and consider that the Amended Complaint allegations are deemed admitted for purposes of this motion, see Discussion Part I.A., infra.

Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

B. RICO Conspiracy

1. Fraud Allegations

Since this is RICO claim is based (in part) on an allegation of fraud, plaintiff must plead that fraud with particularity under Federal Rule of Civil Procedure 9(b), see McLaughlin v. Anderson, 962 F.2d 187, 190-91 (2d Cir. 1992); Wexner v. First Manhattan Co., 902 F.2d 169, 172-73 (2d Cir. 1990) (predicate acts of mail and wire fraud must be pled with particularity). (Docket No. 58, Order at 5.) He must identify which defendant is responsible for each alleged instance of fraud (id. at 6).

Instead, as for most of the defendants, plaintiff presents general allegations that they somehow conspired with principal mover Harold Schectman.

2. RICO Conspiracy Allegations

To state a claim under § 1962(d) for a RICO conspiracy, plaintiff must allege that "'each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise.'" Nasik Breeding & Research Farm Ltd v. Merck & Co., 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001) (quoting Colony at Holbrook, Inc. v. Strata, Inc., 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996)). An individual may be liable only if he or she knew of the conspiracy's goals and agreed to facilitate them. Id.; Baisch v. Gallina,

346 F.3d 366, 377 (2d Cir. 2003). To allege a § 1962(d) claim, plaintiff must allege as to each co-conspirator an agreement to join in the conspiracy, acts of each co-conspirator in furtherance of the conspiracy, and knowing participation in that conspiracy. See Odyssey Re (London) Ltd. v. Stirling Cook Brown Holdings Ltd., 85 F. Supp. 2d 282, 303 (S.D.N.Y. 2000); Nasik, supra, 165 F. Supp. 2d at 541.

Plaintiff must allege the elements of a substantive RICO claim in order to allege a RICO conspiracy. Nasik, supra, 165 F. Supp. 2d at 540. The requirements of a RICO conspiracy under 18 U.S.C. § 1962(d) are less demanding than a substantive charge under 18 U.S.C. § 1962(c). Baisch, supra, 346 F.3d at 376. But plaintiff must allege that defendants "knew about and agreed to facilitate the scheme" that is part of the civil conspiracy. Salinas v. United States, 522 U.S. 52, 66 (1997); Baisch, supra, 346 F.3d at 377. Plaintiff must prove "'the existence of an agreement to violate RICO's substantive provisions.'" Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 244 (2d Cir. 1999) (quoting United States v. Sessa, 125 F.3d 68, 71 (2d Cir. 1997) (quoting in turn United States v. Benevento, 836 F.2d 60, 73 (2d Cir. 1987), cert. denied, 522 U.S. 1065 (1998))). Defendants contend that there has to be a specific allegation of an agreement, that the parties agreed to commit predicate actions, and that the parties knew the objects of the conspiracy (Docket No. 73, Defs. Memo at 18, 19, citing Cofacredit, S.A., supra, 187 F.3d at 244-45. Plaintiff has to establish that defendants (1) agreed to "form and associate themselves with the RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." Cofacredit, S.A., supra, 187 F.3d at 244; but cf. Salinas, supra, 522 U.S. at 65 (conspirator need not agree to commit predicate acts for RICO conspiracy to be alleged). Plaintiff also needs to allege (2) that

defendant co-conspirators intended "to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas, supra, 522 U.S. at 65.

As previously noted (Docket No. 42, Report & Recommendation at 11; see Docket No. 58, Order at 2), plaintiff fails to allege a RICO conspiracy when he fails to allege a substantive RICO claim, see Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996); Nasik Breeding, supra, 165 F. Supp. 2d at 540-41. He admits in his RICO Case Statement that no substantive violations of 18 U.S.C. §§ 1962(a) or (b) have occurred (Docket No. 59, ¶¶ 11, 12).

II. Application

Defendants made extensive arguments on whether plaintiff alleged a RICO conspiracy or an underlying substantive RICO elements for the conspiracy. The Court, however, focuses on the pleading of the conspiracy.

Plaintiff alleges generally that Schectman and Brian Schectman (with others) conspired to commit violations of 18 U.S.C. § 1962(c) by agreeing to commit predicate acts of mail and wire fraud in a pattern of racketeering activity through the Schectman corporate entities (Docket No. 60, Am. Compl. ¶ 20). He alleges two paragraphs of representative listings of mail fraud and wire fraud transmissions he received from defendants (Docket No. 60, Am. Compl. ¶¶ 53, 52). He relies upon the allegations in his Complaint as the "primary resource" for his RICO Case Statement (Docket No. 59, ¶ 5(a), (b)). Plaintiff's allegations are solely the actions of Schectman, through non-defendant employees in his entities. Plaintiff makes a generic allegation that Brian Schectman conspired with Schectman (Docket No. 60, Am. Compl. ¶ 25) and Brian

Schectman was alleged to be Schectman's heir who apparently took over Schectman's affairs in 2002, and conspired to defraud plaintiff (Docket No. 59, ¶ 2). Plaintiff claims in that RICO Case Statement that Brian Schectman conspired to make fraudulent assessments, charging in one unspecified property for work Brian Schectman claimed he performed but had not done as well as eventually converting and selling plaintiff's property without plaintiff's knowledge or approval, for defendants' benefit (id.).

Even including the allegations in the RICO Case Statement (Docket No. 59), plaintiff does not specify the fraud as required under Rule 9(b). As for Mikula, plaintiff also makes general allegations of her assisting defendant Larder, but without alleging her knowledge of the conspiracy (much less the RICO predicate violations or a RICO enterprise and conspiracy). As for Larder, plaintiff alleges that he conspired with Mikula to take control from plaintiff of Manor Oak and Safe Harbour nursing facilities (id.). Plaintiff's amended allegations appear to list Schectman's activities but not an underlying agreement of others to join in an alleged racketeering scheme.

While plaintiff alleges Schectman's knowledge of the purported conspiracy, he does not allege the knowledge of the other co-defendants. Plaintiff also does not allege an agreement among the defendants to facilitate the scheme, see Salinas, supra, 522 U.S. at 66; Baisch, supra, 346 F.3d at 377, or to perpetrate underlying predicate offenses.

Again, plaintiff fails to allege a RICO enterprise. He alleges the existence of the various Schectman entities that he had to deal with, but again (as found with the initial Complaint, see Docket No. 58, at 3) does not allege a common purpose, hierarchy, organization or activities of the purported enterprise, only alleging Schectman's activities and not the specific activities of a

given entity or entities. The same deficiencies remain in the amended pleadings as were noted in the initial Complaint. Therefore, plaintiff fails to allege a civil RICO conspiracy claim in the Amended Complaint and defendants' joint motion should be **granted** dismissing this pleading.

III. Leave to Amend (Again)

Although plaintiff has not requested leave to amend yet again, from Chief Judge Arcara's earlier Order (Docket No. 58, at 4) allowing plaintiff leave to replead, the issue arises whether plaintiff should get a third attempt at alleging his RICO claims. Despite the "judicial criticisms" of the original pleading (Docket No. 78, Pl. Atty. Decl. ¶ 4), plaintiff here only reduced the size of his pleading without addressing the necessary substantive issues to assert a RICO conspiracy claim. It was previously recommended that plaintiff not be given leave to amend (Docket No. 42, Report & Recommendation at 11). The present proposed amendment[6] following that recommendation shows the futility of further attempts at amendment. Thus, leave to amend yet again **should not be granted**.

**CONCLUSION**

Based upon the above, it is recommended that defendants Harold Schectman and Brian Schectman joint motion (Docket No.72) to dismiss the Amended Complaint (Docket No. 60), joined by pro se defendants Donald Larder and Donna Mikula (see Docket No. 76), be **granted**.

---

[6]Although not yet formally suggested on the record, cf. Fed. R. Civ. P. 25(a)(1), the death of the alleged instigator of this RICO conspiracy, Harold Schectman, makes a renewed attempt to amend appear more futile than if he were still alive.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
November 22, 2005

Attachment